United States District Court
Southern District of Texas
**ENTERED**
December 08, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AGUSTIN NUNEZ REYNOSO, | § § | |
| Petitioner, | § § | |
| VS. | § § | CIVIL ACTION NO. 2:22-CV-00108 |
| REEVES COUNTY DETENTION CENTER III, | § § § § | |
| Respondent. | § § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Agustin Nunez-Reynoso, proceeding *pro se*, is a federal prisoner at the Federal Correctional Institution-Three Rivers in Three Rivers, Texas. On May 9, 2022, he filed the present 28 U.S.C. § 2241 petition, alleging various claims that his due process rights were violated during prison disciplinary proceedings. (D.E. 1, 7). Respondent Warden J.W. Cox ("the Government") has filed a motion for summary judgment, to which Nunez-Reynoso has responded. (D.E. 15, 18). For the reasons discussed further below, it is recommended that the Government's motion for summary judgment (D.E. 15) be **GRANTED** and Nunez-Reynoso's petition be **DISMISSED** without prejudice in part and **DISMISSED** for failure to exhaust in part.

### I. JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and venue is appropriate in this court because Nunez-Reynoso is incarcerated in the Southern District of Texas. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000).

## II.  BACKGROUND

### *a.  Petition*

In his petition, Nunez-Reynoso first alleges that he was unlawfully charged in disciplinary proceedings with threatening another with bodily harm because the reporting officer failed to present all the evidence. (D.E. 1 at 6; D.E. 7 at 3-5). Instead, Nunez-Reynoso contends that he was threatened by his unit manager, who also provided another inmate with personal information regarding Nunez-Reynoso's family. (D.E. 7 at 3-5). Second, Nunez-Reynoso alleges that his rights were violated during the disciplinary hearing because the Government did not follow its own rules governing the hearing and did not obtain a proper translation of his statement. (D.E. 1 at 6; D.E. 7 at 5-6). Third, Nunez-Reynoso alleges that the disciplinary hearing report was fabricated in retaliation for him telling staff members that he would write them up for mistreating him. (D.E. 1 at 6; D.E. 7 at 6-9). Fourth, Nunez-Reynoso alleges that the Government violated disciplinary and safety procedures by going against its own policy by returning him to the same housing unit where staff members previously threatened him. (D.E. 1 at 7; D.E. 7 at 10).

Fifth, Nunez-Reynoso argues that his due process rights were violated when he was put in disciplinary segregation. (D.E. 7 at 10-11). Sixth, Nunez-Reynoso alleges that he was forced to stand in the sun for several hours while he had COVID-19, which, in combination with his asthma, has resulted in frequent breathing problems. (*Id.* at 12-13). Seventh, Nunez-Reynoso alleges that the Government violated the administrative remedy procedure because he used certified mail to send an appeal to the Central Office, but the

Central Office later denied having ever received an appeal. (*Id.* at 13-14). Finally, Nunez-Reynoso alleges that his due process rights were violated because he did not receive timely notice of the incident report, was not allowed to present video evidence at his hearing, and was not given a translator to give a proper translation of his statement. (*Id.* at 14-18).

Nunez-Reynoso seeks to have the charge expunged or, alternatively, to obtain a rehearing where he can present more evidence. (D.E. 1 at 7). He also seeks to file a civil suit and obtain monetary damages. (*Id.*).

Nunez-Reynoso attached a photocopy of a certified mail receipt, dated December 17, 2020, and addressed to the Central Office of the Bureau of Prisons ("BOP"). (D.E. 7 at 21). He also attached an August 3, 2021, correspondence from the Central Office indicating that he never filed an appeal. (*Id.* at 22).

     b.   *Summary Judgment Evidence*

In September 2011, Nunez-Reynoso was found guilty of one count of conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846. (D.E. 14 at 3). The offense ended in March 2010. (*Id.*). He was sentenced to 240 months' imprisonment. (*Id.* at 4).

On November 3, 2020, Assistant Investigator A. Madril at the Reeves County Detention Center interviewed Nunez-Reynoso after Nunez-Reynoso refused his program assignment to return to the general population. (*Id.* at 7). Madril told him that he could not just demand a transfer and that he would not be sent to the same unit where he previously claimed to have issues with the unit manager. Nunez-Reynoso responded that

"if you send me to General Population I will take them down." Nunez-Reynoso indicated that he was referring to the unit manager and two other BOP employees. Madril advised Nunez-Reynoso that he had just made a threat to assault staff. As a result, Nunez-Reynoso was charged with threatening another with bodily harm. A copy of the incident report was provided to him on the same day. The report was referred to a Disciplinary Hearing Officer ("DHO") for a hearing. (*Id.*). Nunez-Reynoso's comment on the incident was that the report was not correct, he never threatened anyone, and he did not feel safe in the general population. (*Id.* at 7-8).

On November 5, 2020, Nunez-Reynoso was advised of his rights in the upcoming disciplinary hearing, but he refused to sign the acknowledgment form. (*Id.* at 17). He was given notice that there would be a hearing, but the time was listed as "TBA." (*Id.* at 18). Nunez-Reynoso sought to have a staff representative, but did not seek to have witnesses. He refused to sign the notice. (*Id.*). Nunez-Reynoso waived 24-hour notice, but refused to sign the form. (*Id.* at 19). Lieutenant Chavez agreed to act as his staff representative. (*Id.* at 20).

A November 10, 2020, inmate investigative report regarding Nunez-Reynoso's claim that he would be unsafe in the general population indicated that, on October 6, 2020, Nunez-Reynoso became angry at a case manager because he had not received materials needed for his legal case. (*Id.* at 12). He stated that he did not want to be in the unit anymore. As Nunez-Reynoso exited the office, the unit manager stopped him and asked him what was going on. Nunez-Reynoso was argumentative and walked off saying he no

4

longer wanted to be at the institution. After exiting the unit, Nunez-Reynoso encountered a captain and lieutenant and told them that he would not return to the unit and wanted to go to the Restricted Housing Unit ("RHU"). Nunez-Reynoso was told that he had to return to the unit, but he refused. (*Id.*). He was then escorted to speak to Special Investigative Services ("SIS"). (*Id.* at 13). Madril, the SIS investigator, spoke to Nunez-Reynoso, who stated he was having issues with the unit manager because his family was not approved to visit. Madril told him that he needed to calm down, but Nunez-Reynoso did not. Madril said that he would be moved to another unit, but Nunez-Reynoso refused. As a result, he was placed in the RHU. (*Id.*).

The inmate investigative report further indicated that at a second interview with Madril on November 3, 2020, Nunez-Reynoso was informed that he was ordered to return to the general population. (*Id.*). Nunez-Reynoso refused. Madril explained that he was being placed in a different unit and that there was no reason for him to be in the RHU. Nunez-Reynoso still refused to return to the general population because he was unable to listen to CDs necessary for his legal case and he wanted to move to a different facility. Madril told him that he could not be transferred just because he did not like the facility. At this point, Nunez-Reynoso stated that "if you send me to General Population, I will take them down," referring to the unit manager, captain, and lieutenant. (*Id.*). The investigation concluded that Nunez-Reynoso should be ordered to general population because there was no need for continued placement in RHU and no verified threat to his safety. (*Id.* at 16).

The DHO's report indicated that a hearing was held on November 19, 2020. (*Id.* at 9). Nunez-Reynoso again denied the charge. He stated that he did not threaten anyone, but rather felt threatened by staff members, and that he would not return to general population because he believed the officers would beat him up, which happened at another institution he was at. Nunez-Reynoso waived his right to present witnesses. (*Id.*). In addition to the incident report and investigation, the DHO considered the November 10, 2020, inmate investigative report. (*Id.* at 10). The DHO concluded that Nunez-Reynoso threatened another with bodily harm as charged. The DHO acknowledged Nunez-Reynoso's denial, but concluded that it was insufficient and that there was no obvious reason to believe the incident report was fabricated. (*Id.*). Accordingly, the DHO gave greater weight to the reporting officer's written testimony. (*Id.* at 11). As a result of the conviction, Nunez-Reynoso lost 27 days of good conduct time, 45 days of visitation privileges, and 45 days of commissary privileges. (*Id.*).

In a July 7, 2022, declaration, BOP legal assistant C. Chapman stated that a search showed that Nunez-Reynoso had never filed an appeal of the disciplinary hearing. (D.E. 14-2 at 1-2).

### III. DISCUSSION

*a. Conditions of Confinement*

In the motion for summary judgment, the Government first argues that several of Nunez-Reynoso's claims are inappropriate for a § 2241 petition because they challenge the conditions of his confinement rather than the duration. (D.E. 15 at 4-5). Specifically, the

6

Government contends that any claims regarding privacy violations, First Amendment violations, Eighth Amendment violations, and being unconstitutionally held in segregation are not properly raised in a § 2241 petition. (*Id.* at 5). The Government also argues that Nunez-Reynoso's request for monetary damages is in improper in a § 2241 petition. (*Id.* at 15).

Nunez-Reynoso does not address this argument in his response. (*See generally* D.E. 18).

"[H]abeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose. … [I]t cannot be utilized as a base for the review of a refusal to grant collateral administrative relief or as a springboard to adjudicate matters foreign to the question of the legality of custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). In short, "if a favorable determination of the prisoner's claim would not automatically entitle him to accelerated release, then the proper vehicle is a civil rights suit." *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020). Thus, claims that attack the conditions of confinement or prison procedures belong in a civil rights suit. *Id.* Similarly, civil rights claims requesting monetary damages are not properly raised in a habeas petition. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).

Here, to the extent that Nunez-Reynoso seeks to raise claims that challenge the conditions of his confinement rather than the duration, those claims are not properly raised in a § 2241 petition and must be raised in a civil rights lawsuit under 42 U.S.C. § 1983. In

7

particular, Nunez-Reynoso's claims regarding privacy violations, First Amendment violations, Eighth Amendment violations, and being unconstitutionally held in segregation are civil rights claims where a favorable determination "would not automatically entitle him to an accelerated release," and the "proper vehicle is a civil rights suit." *Melot*, 970 F.3d at 599. Similarly, Nunez-Reynoso's request for monetary damages is not properly raised in a § 2241 petition, but rather is also appropriate for a civil rights suit. *Nelson*, 541 U.S. at 643. Accordingly, it is recommended that these claims be **DISMISSED** without prejudice to refiling in a civil rights suit.

    b.    *Exhaustion*

Next, the Government argues that Nunez-Reynoso has failed to exhaust his administrative remedies regarding his claims about the disciplinary proceeding and sanction. (D.E. 15 at 2-4). The Government argues that Nunez-Reynoso never appealed the disciplinary proceedings to the BOP's Regional Office as required. (*Id.* at 4). The Government notes that Nunez-Reynoso claims to have filed an appeal to the BOP's Central Office, although the certified mail receipt is cut off and the tracking number is incomplete, but he must first appeal to the Regional Office anyway. (*Id.*).

Nunez-Reynoso responds that he exhausted his administrative remedies. (D.E. 18 at 7). He contends that he requested the address of the Regional Office, but an officer incorrectly gave him the address for the Central Office. (*Id.* at 6-7). He attached an August 2, 2021, Regional Administrative Remedy Appeal ("BP-10") to the BOP's Regional Office in which he complains that the Central Office never responded to his appeal. (*Id.* at 20).

He also attached a November 23, 2021, Central Office Administrative Remedy Appeal ("BP-11") raising the same claim, along with his underlying claim that the disciplinary conviction should be expunged. (*Id.* at 19). In both, he notes that the Reeves County Detention Center only has an informal resolution and grievance system, but does not have the intermediate BP-9 appeal prior to filing a BP-10 with the Regional Office. (*Id.* at 19-20). Finally, Nunez-Reynoso attached a mail tracking sheet indicating that he mailed something to Washington, DC, that was delivered on December 22, 2020. (*Id.* at 22-23).

A § 2241 petitioner must first exhaust his administrative remedies in the BOP. *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[M]ere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion." *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). Exceptions to the exhaustion requirement are only appropriate if the administrative remedies are unavailable or wholly inappropriate to the relief sought, or where an attempt to exhaust the remedies would be futile. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). These exceptions only apply in extraordinary circumstances. The petitioner bears the burden of showing that administrative review would be futile. *Id.*

Initial administrative appeals of a DHO decision must be submitted to the Regional Director for the region where the inmate is located. 28 C.F.R. § 542.14(d)(2). This must be done within 20 calendar days from the date on which the DHO's decision occurred and be on the proper BP-10 form. *Id.* §§ 542.14(a), 542.15(a). If the inmate is not happy with

9

the Regional Director's response, he may submit an appeal on form BP-11 to the General Counsel within 30 days. *Id.* § 542.15(a). An inmate cannot raise issues before the General Counsel that were not raised to the Regional Director. *Id.* § 542.15(b)(2). The Regional Director must respond to an appeal within 30 days, and the General Counsel must respond within 40 days. *Id.* § 542.18. If a response is not received within the time allotted, the inmate may consider the absence of a response to be a denial. *Id.*

Here, it does not appear that Nunez-Reynoso properly exhausted his administrative remedies regarding the claims in his petition. In order to exhaust his remedies in accordance with the agency's deadlines and procedural rules, Nunez-Reynoso was required to file a BP-10 appeal to the Regional Office within 20 days of the DHO's November 19, 2020, decision. 28 C.F.R. §§ 542.14(a), 542.15(a). The BOP represents that it has no record that Nunez-Reynoso filed any appeal of the disciplinary hearing. (D.E. 14-2 at 1-2). Nunez-Reynoso represents that he filed a BP-11 appeal directly to the Central Office. (D.E. 7 at 13-14). However, he has not submitted a copy of the appeal he submitted, but rather only a certified mail receipt showing that he mailed something to Washington, DC, in December 2020. (D.E. 7 at 21; D.E. 18 at 22-23). Moreover, filing an appeal directly to the Central Office does not follow the applicable procedural rules, which require an appeal of a DHO decision to first be filed with the Regional Office. 28 C.F.R. §§ 542.14(d)(2), 542.15(b)(2). Accordingly, Nunez-Reynoso has not established that he exhausted his administrative remedies with regard to the claims he now seeks to raise in his § 2241 petition.

Nunez-Reynoso did submit an August 2021 BP-10 appeal to the Regional Office, but this appeal complains only of the Central Office's failure to respond to his purported original appeal. (D.E. 18 at 20). First, this BP-10 appeal was not filed within 20 calendar days of the DHO's decision as required by the regulations. 28 C.F.R. §§ 542.14(a), 542.15(a). Second, it still does not directly raise his claims on appeal of the DHO's decision, but rather only inquires about the result of the original appeal he allegedly filed with the Central Office. (*See* D.E. 18 at 20). Thus, this BP-10 does not show that Nunez-Reynoso properly exhausted his claims in "compliance with [the] agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Finally, Nunez-Reynoso has not shown extraordinary circumstances that would warrant an exception to the exhaustion requirement. *Fuller*, 11 F.3d at 62. He indicates that a staff member provided him with the wrong address for his initial appeal, which is why he filed it with the Central Office, but that does not show that the administrative remedies were unavailable or wholly inappropriate to the relief sought, or that an attempt to exhaust the remedies would have been futile. *Id.* Notably, Nunez-Reynoso's August and November 2021 BP-10 and BP-11 forms indicate that he understood the proper appeal requirements and procedure, but he did not mention being given the wrong address by a staff member or otherwise try to file a new BP-10 properly raising his underlying claims with the Regional Office. (*See* D.E. 18 at 19-20).

Accordingly, it is recommended that Nunez-Reynoso's claims regarding the disciplinary proceeding and result be **DISMISSED** for failure to exhaust his administrative remedies. However, the undersigned will also address the merits of his claims below.

    *c.    Due Process*

As to Nunez-Reynoso's due process claims, the Government first argues that the BOP followed all regulatory procedures during the process of charging, convicting, and sanctioning Nunez-Reynoso. (D.E. 15 at 7-9). Second, the Government argues that Nunez-Reynoso received all due process protections afforded to prisoners during disciplinary proceedings because: (1) he received notice of the hearing over 24 hours beforehand; (2) he was given the opportunity to appear at the hearing, call witnesses, and present evidence; (3) the DHO provided a written decision regarding the evidence relied on and the reasons for the sanctions; and (4) he was offered, and accepted, a staff representative for the hearing. (*Id.* at 9-12). Third, the Government argues that the necessary evidentiary standard was met because there was some evidence to support the conviction, namely Nunez-Reynoso's statement that he would "take them down" if sent to the general population. (*Id.* at 12-14). Finally, the Government argues that disallowing 27 days of good conduct time was an appropriate sanction under the regulations. (*Id.* at 14-15).

Nunez-Reynoso responds that he did not say that he would "take them down," but rather that he was not "going down to general population because I do not feel safe here." (D.E. 18 at 5). He contends that Madril falsely stated otherwise in the incident report.

12

(*Id.*).  He asserts that the DHO initially told him that she was going to drop the charge against him, but subsequently returned and yelled at him for lying to her and found him guilty without allowing him to present any defense.  (*Id.* at 6).  As to the required due process protections, Nunez-Reynoso argues that: (1) there is no evidence that he was provided written notice of the hearing 24 hours in advance; (2) he was not offered the chance to present rebuttal evidence because, although he stated that he never threatened anyone, there was no audio recording of the incident and therefore he could not corroborate his defense; and (3) there is no evidence that he was provided a copy of the DHO's factual findings.  (*Id.* at 9-11).  Nunez-Reynoso further argues that his due process rights were violated because the DHO relied solely on the staff member's uncorroborated statement regarding the threat.  (*Id.* at 12-13).  Finally, Nunez-Reynoso contends that the Government's argument regarding his loss of 27 days of good conduct time is flawed because it references a conviction for fighting, when he was convicted of threatening, and also references the wrong facility by saying the conviction occurred at FCI-Three Rivers when it instead occurred at the Reeves County Detention Center.  (*Id.* at 14).

In prison disciplinary hearings, offenses are separated into four categories based on severity: greatest, high, moderate, and low.  28 C.F.R. § 541.3(a).  Threatening another with bodily harm is a high severity level prohibited act.  *Id.* § 541.3, Table 1.  Sanctions available for high severity level prohibited acts include: (1) forfeiture or withholding of earned statutory good time or non-vested good conduct time up to 50% or 60 days, whichever is less; (2) forfeiture of up to 27 days of earned FSA Time Credits for each

13

prohibited act committed; (3) disciplinary segregation for up to 6 months; (4) loss of privileges; and (5) impoundment of the inmate's personal property, among other sanctions. *Id.* Inmates who committed their offense on or after April 26, 1996, lose good conduct sentence credit as a mandatory disciplinary sanction. *Id.* § 541.4(a), (b). For high severity offenses, the inmate will lose at least 27 days, or 50% of available credit if less than 54 days are available, for each act committed. *Id.* § 541.4(b)(2).

The disciplinary process begins with an incident report completed by a staff member who believes that an inmate committed a prohibited act. *Id.* § 541.5(a). The inmate will ordinarily be given a copy of the report within 24 hours. *Id.* A BOP staff member then investigates the report and must inform the inmate of the charges against him and that he may remain silent, but that his silence may be used to draw an adverse inference against him. *Id.* § 541.5(b)(1). The investigator will ask for a statement from the inmate, and the inmate may provide an explanation of the incident, request that witnesses be interviewed, or request that other evidence be obtained and reviewed. *Id.* § 541.5(b)(2). Following the investigation, a Unit Discipline Committee reviews the incident report. *Id.* § 541.7. However, high severity prohibited acts are automatically referred to the Discipline Hearing Officer ("DHO") for further review. *Id.* § 541.7(a)(4).

The DHO is an impartial decision maker who was not involved in the investigation or incident. *Id.* § 541.8(b). The inmate will receive written notice of the charges against him at least 24 hours before the DHO's hearing, although this requirement can be waived. *Id.* § 541.8(c). An inmate is allowed to have a staff representative at the DHO hearing and

may request a person of their choice who was not involved in the incident or investigation. *Id.* § 541.8(d)(1). The inmate is permitted to appear before the DHO during the hearing, although an inmate can waive his appearance, or an appearance may be prohibited if necessary to protect institution security. *Id.* § 541.8(e). The inmate is also entitled to make a statement and present documentary evidence. *Id.* § 541.8(f).

If the DHO concludes that the inmate committed a prohibited act, the DHO can impose any of the available sanctions listed in § 541.3. *Id.* § 541.8(g). The DHO will produce a written report of their decision following the hearing that discusses whether the inmate was advised of his rights, the evidence relied on, the DHO's decision, the sanctions imposed, and the reasons for those sanctions. *Id.* § 541.8(h).

Supreme Court precedent holds that a prisoner is entitled to certain due process procedures in disciplinary proceedings, including: "(1) written notice of the charges at least 24 hours prior to a disciplinary hearing; (2) an opportunity to call witnesses and present evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the factfinders as to the evidence relied on and the reason for the disciplinary action." *Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009) (internal quotation marks omitted). In order for a DHO's decision to stand, a reviewing court need only find "some evidence" supporting the decision. *Id.* "Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision." *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001). "Ascertaining whether this standard is satisfied does not require

15

examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

"Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Here, Nunez-Reynoso has not established that his due process rights were violated during the disciplinary proceedings. The record indicates that Nunez-Reynoso was afforded the due process protections necessary in prison disciplinary proceedings. *Morgan*, 570 F.3d at 668. First, the record indicates that Nunez-Reynoso was informed of his right to have written notice of the charge more than 24 hours prior to the DHO hearing, but waived that right. (D.E. 14 at 17-19). Although the forms indicate that he refused to sign them, they also indicate that he wanted to have Lieutenant Chavez as his staff representative. (*Id.* at 18). The record also indicates that Nunez-Reynoso was informed of his right to call witnesses and present evidence at the hearing. (*Id.*). As to Nunez-Reynoso's contention that he could not corroborate his defense because his conversation with Madril was not recorded, the fact that the evidence he wanted to present did not exist does not show that he was not given the opportunity to present evidence. Finally, he was given a written statement by the DHO as to the evidence relied on and the reason for the disciplinary action. (*Id.* at 11). Additionally, the evidence was sufficient to support the DHO's conclusion because "some evidence" supported that Nunez-Reynoso threatened

another person, namely Madril's report that Nunez-Reynoso stated that he would "take them down" if returned to the general population. (*Id.* at 7, 13); *Morgan*, 570 F.3d at 668. Although Nunez-Reynoso contends that this is not what he said, he was able to present that defense at the disciplinary hearing. (D.E. 14 at 9). The credibility assessment in favor of Madril is within the DHO's discretion and this Court does not independently assess credibility on review. *Hill*, 472 U.S. at 455.

Finally, Nunez-Reynoso is correct that the Government's motion identifies the wrong prohibited act when discussing the disallowance of 27 days of good conduct time. (*See* D.E. 15 at 14). The disciplinary sanction was for threatening another with bodily harm, not for fighting with another person. (D.E. 14 at 9-11). However, both prohibited acts are classified as the same severity in the regulations, and the disallowance of 27 days of good conduct time is an appropriate sanction for either offense. 28 C.F.R. § 541.3, Table 1. Accordingly, even if Nunez-Reynoso properly exhausted his administrative remedies, it is recommended that his petition be **DENIED**.

## IV. RECOMMENDATION

Accordingly, it is respectfully recommended that the Government's motion for summary judgment (D.E. 15) be **GRANTED** and Nunez-Reynoso's petition (D.E. 1) be **DISMISSED** without prejudice in part and **DISMISSED** for failure to exhaust in part.

Respectfully submitted on December 8, 2022.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).